# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

TIMOTHY A. HEWITT,

        Defendant.

Case No. 19-00338-01-CR-W-DGK

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America respectfully offers this memorandum to the Court in support of its recommendation that defendant Timothy A. Hewitt be sentenced to a within Guidelines sentence of 180 months confinement, to be followed by supervised release for life.

## BACKGROUND

On June 15, 2020, the defendant pled guilty to Count One of the Indictment (Attempted Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2)) pursuant to a written plea agreement. (Doc. No. 27.) The Government agreed to dismiss Counts Two and Three. The Probation Office filed the court-ordered Presentence Investigation Report (PSR) on September 14, 2020. (Doc. No. 29.) The minimum term of imprisonment in this case is five years, and the maximum term of imprisonment is 20 years. The defendant is also subject to a term of supervised release following his confinement of up to life, but no less than five years.

## DEFENDANT'S OBJECTIONS TO THE PSR AND ARGUMENTS

The defendant has no objections to the PSR. However, the defendant raises a number of arguments in support of a below-guidelines sentence of 72 months. The primary justification the defendant relies on is his psychological evaluation conducted by Dr. Boniello, as reflected in a

report dated February 19, 2019 (hereinafter referred to as Report).[1]  However, that analysis should be given little to no weight by this Court.

Dr. Boniello's conclusions are based on a faulty understanding of the facts in this case, as well as on the misrepresentations made by the defendant to him throughout their brief 4.5 hours together.

First, the defendant misrepresented his distribution of child pornography.  Dr. Boniello reports that the defendant told him he "was initially unaware that the program he was using to download pornography onto his computer also had the capacity to distribute pornography to others without his knowledge or control."  (Report at 3.)  Dr. Boniello then notes that "[h]e did admit, however, that at a certain point, he began to purposefully save and exchange sexual material depicting underage children onto his and from his computer."  (Report at 3.)  The defendant's explanation to Dr. Boniello about his distributing child pornography to blatantly minimizes the actual misconduct he admitted to engaging in.  The defendant's distribution was not simply a case of him making child pornography available to other users to download through a Torrent program.  To the contrary, the defendant specifically used the app "Rabb.it," which allows users to simultaneously view images and videos together, to distribute child pornography directly to other users, ostensibly so the defendant and those users could be simultaneously aroused by these depictions.

Dr. Boniello also makes repeated statements throughout his report that the defendant does not exhibit any pedophilic or other inappropriate tendencies: "his sexual preferences remained age appropriate"; "[defendant] reports to no physical and/or emotional attraction to children with regards to his sexual preferences";  "there was no indication of pedophilic tendencies during the evaluation and no evidence of past sexual impropriety or fetishes including sado-masochistic

---

[1]The defendant provided this report to the Court via email on October 6, 2020.

2

and/or other forms of physically harmful sexual behavior"; "Mr. Hewitt reported he had no sexual fantasies regarding children prior to file sharing and stated he had never considered having sexual contact with a minor before or since the time of his index offenses"; "there was no indication of pedophilic thought or fantasies and no psychopathic urges which would lead to further offense behavior observed during the evaluation;" "there did not appear to be a . . . desire to misuse minors in his sexual preferences"; "he has never considered having sexual contact with a child"; "[Dr. Boniello] did not observe any indication of pedophilic fantasies, psychopathic motivation or the characteristic antisocial disregard for others (including rape fantasies or other sexually deviant behavior) that is often seen in high risk offenders"; "[t]here did not appear to be any risk factors, however, associated with a primary attraction to underage children nor a desire to act out in a sexually deviant manner"; "[t]here was no evidence of pedophilic thoughts or urges in his responses throughout the evaluation."

It is clear that Dr. Boniello relied almost exclusively on the defendant's own admissions and statements during their sessions in formulating his opinions, and not on the actual evidence underlying his convictions.[2]  Had Dr. Boniello reviewed the evidence, he would have seen that the defendant's own actions and statements in this case directly contradict Dr. Boniello's conclusions highlighted above.  The chats summarized within the PSR undoubtedly demonstrate the defendant's sexual interest in children and his desire to engage in deviant sexual behavior with them.  While communicating with Kimberpink94, who appears to be a minor based on the context of the chats, the defendant states that he "love[s] the idea of her coming to live with [him] as a broken little fuck toy."  (PSR at ¶ 14; Doc No. 29).  "Mmmm do you like rough sex?  Can I choke

---

[2]Dr. Boniello notes that he relied on "documentation review," but does not specify which documents he was provided nor reviewed.  It is clear from the context, however, that he was not provided with the background evidence associated with the case or the defendant's actual misconduct.

3

you as I fuck your slutty cunt . . . Would you let daddy use you however he wants?" (PSR at ¶14; Doc. No. 29.)

When speaking to another individual who appears to be a minor male based on the context of the conversation, the defendant discussed wanting the minor to "suck" him, wanting to "fuck [his] young little mouth," and wanting to "fuck [his] little boy asshole till [he] cant stand." (PSR at ¶ 15; Doc. No. 29.)

The defendant also discusses his sexual fantasies with T.S., an adult male with a minor daughter. (PSR at ¶ 17; Doc. No. 29). He discusses wanting to tie up T.S.'s daughter, says, "If she was watching you suck me. I would wait till she was all horny then I'd wave her over and I would show her how to be a good little fuck toy for her daddy and his friend." (PSR at ¶ 17; Doc. No. 29.) He also stated that "if I had her tied up I'd pinch and tug on her little girl tits. Torcher[*sic*] her little nipples and watch her cry." (PSR at ¶ 17; Doc. No. 29.) Finally, the defendant specifically stated that "I like to fantasize about rape and being really rough but I would never actually do it." (PSR at ¶ 17; Doc. No. 29.)

These statements made by the defendant in chats to and about minors, when he was not under investigation or charges for distributing and possessing child pornography, clearly establish what his sexual preferences are and what he would desire to do if given the opportunity. His claims of innocent thought and sexual desires to Dr. Boniello should be rejected by this Court, as should the entire conclusions by Dr, Boniello because they are based entirely on the defendant's own self-serving statements.

The defendant's additional arguments in his sentencing memorandum are equally unpersuasive. He relies on two primary factors to justify a minimal sentence: (1) The defendant's age; and (2) his lack of criminal history.

4

The defendant argues that should he be required to remain in prison for an extended period of time, it will reduce his rehabilitative potential because he will miss out on much of his life. The case cited by the defendant discusses him losing his "light at the end of the tunnel." Was the defendant concerned with the victims' light at the end of the tunnel when he possessed and trafficked in their sexually exploitative images? What leniency are they provided when persons such as the defendant continue to sexually exploit them with their images that are forever loose upon the internet? The defendant's focus on his age ignores the remaining sentencing factors of ensuring the punishment is just, deterrence, and protection of society. To be sure, those factors weigh heavily in support of a lengthy prison sentence for the defendant for his offenses. By the defendant's own logic, recidivism rates go down the older an individual is when they are released; consequently, to try to ensure that the defendant does not engage in this behavior again upon his release, this court should impose a sentence that results in the defendant being as old as practical upon his release.

The defendant also argues his lack of scoreable criminal history as mitigating. He states that his "lack of prior experience with the criminal justice system strongly suggests that a minimal or reduced herein will be sufficient to deter Defendant from future criminality." (Hewitt Sent Memo at 10; Doc. No. 32.) However, this argument ignores that in 2013 an associate of the defendant discovered child pornography on his iPad and reported it to law enforcement. (PSR at ¶¶ 45-46; Doc. No. 29.) Ten days later the defendant was contacted and declined to answer questions are allow a search of his iPad. (PSR at ¶ 45; Doc. No. 29.) The associate thereafter recanted their report. (PSR at ¶ 46; Doc. No. 29.) Despite apparently being caught in possession of child pornography years earlier, the involvement of law enforcement did nothing to dissuade him from continuing in this behavior. Consequently, a heavy punishment will be required to finally deter this defendant from engaging in this behavior.

5

<u>**ARGUMENTS FOR SENTENCING CONSIDERATIONS**</u>

The Supreme Court has set forth the procedure this Court is to utilize when fashioning a sentence. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). First, this Court is to calculate the applicable Guidelines range, which shall serve as "the starting point and the initial benchmark." *Id*. at 49. The Court is next to consider the evidence and argument by the parties as to a particular sentence. *Id*. Third, the Court will "make an individualized assessment based on the facts presented" of the § 3553(a) factors to determine whether they support the proposed sentences, without presuming that the Guidelines range is reasonable. *Id*. at 50. Finally, the Court is to "adequately explain the chosen sentence," taking into account that should the chosen sentence be outside the applicable Guidelines range, "the justification is sufficiently compelling to support the degree of the variance." *Id.*

<u>**Sentencing Guidelines**</u>

The PSR correctly calculates the Sentencing Guidelines in this case. The base offense level under U.S.S.G. § 2G2.2(a)(2) is 22, because the defendant trafficked and possessed material involving the sexual exploitation of a minor. The defendant is also subject to a number of sentencing enhancements based on the specific offense characteristics. A two-level enhancement under § 2G2.2(b)(2) applies because the offense involved material portraying prepubescent minors or minors who had not attained the age of 12 years. Because the defendant engaged in distribution, an additional two-level enhancement is applied under § 2G2.2(b)(3)(F). Because some images depicted bondage, as well as the sexual abuse of infants and toddlers, a four-level enhancement is applied under § 2G2.2(b)(4). Under § 2G2.2(b)(6), because the defendant used a computer, a two-level enhancement applies. Finally, a five point enhancement under § 2G2.2(b)(7)(D) applies because the defendant possessed more than 600 images. The total adjusted offense level is consequently 37.

The defendant is entitled to a 3-point reduction for acceptance of responsibility under § 3E1.1. The PSR also correctly calculates the defendant's criminal history, which results in a criminal history category of I.

Based on an adjusted offense level of 34, with a criminal history category of I, the defendant's Guidelines range is 151-188 months confinement.

## 18 U.S.C. § 3553(a) factors

While "the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives," *Rita v. United States*, 551 U.S. 338, 350 (2007), they are merely the starting point and the Court is free to fashion a sentence within the Guidelines range, below the Guidelines range, or above the Guidelines range depending on the nature and circumstances of each particular case, in accordance with the factors under 18 U.S.C. § 3553(a), subject only to the statutory maximum and minimum penalties.

In applying the statutorily required sentencing factors under 18 U.S.C. § 3553(a), the Government focuses this section on those facts and circumstances which justify a sentence at the high end of the Guidelines range. The Plea Agreement and PSR recount in detail the defendant's conduct that resulted in his indictment and subsequent guilty plea for being a Felon in Possession of a Firearm. The Government will not restate the facts in their entirety in this memorandum.

## The Nature and Circumstances of the Offense and the Historyand Characteristics of the Defendant

A number of factors related to the offense in this case and the defendant in particular necessitate a strict sentence. As discussed in more detail herein, the defendant possessed and trafficked in heinous depictions of child sexual abuse, involving 112 known victims of child pornography. He engaged in conversations with both children and adults expressing his clear desire to violently sexually abuse children. This defendant deserves the strictest of sentences in this case, and a within guidelines sentence of 180 months clearly meets the interests of justice.

7

**The Need for the Sentence Imposed to:**

**(A)     Reflect the Seriousness of the Offense, Provide Just Punishment, and Promote Respect for the Law**

Insofar as the Guidelines provide a "rough approximation" of the appropriate sentence for this offense, a sentence to 180 months confinement is necessary to reflect the seriousness of this offense and all of the attendant relevant conduct by the defendant in this case. The seriousness of this particular case is reflected in the nature and quantity of depictions of child pornography that the defendant possessed and trafficked. Within the defendant's substantial collection were 116 separate identified victims. (PSR at ¶ 21; Doc. No. 29.) The defendant's child pornography depicted graphic sexual assaults of minor girls, including infants and toddlers. (PSR at ¶¶ 5, 12; Doc. No. 29.) Further, the obscene images the defendant possessed depicted horrendous fantasies of infants being sexually abused. (PSR at ¶ 13; Doc. No. 29.)

The images and videos the defendant possessed and trafficked are consistent with his desires to sexually abuse children, as reflected in his chats with both children and other adults. (PSR at ¶¶ 14-18; Doc. No. 29.) He specifically sought out minor children, and expressed a clear desire to violently sexually abuse them.

**(B)     Promote Adequate Deterrence**

Despite being caught with child pornography in 2013, and not being formally charged, the defendant apparently continued with this behavior until he was finally caught in this case. The fear of being punished had no effect on him then, and did not dissuade him from trafficking in child pornography. Therefore, actual, significant punishment is necessary to convince him that this misconduct cannot ever be allowed to continue again.

**(C)     Protect the Public from Further Crimes of the Defendant**

The defendant has shown by his actions in this case that he is a danger to the public. Not only was the defendant purposefully distributing child pornography to others through the internet,

8

the chats reflected in the PSR fully demonstrate his pedophilic tendencies and his desires to sexually abuse children. As recounted in detail, above, the defendant has told others he desires to inflict pain on children, and harbors rape fantasies of them. He wants to use children like sexual toys. If given the opportunity to do so, the defendant poses a significant threat to others in the community. Consequently, a lengthy prison sentence followed by a lifetime of supervised release will be required to ensure this defendant cannot endanger children.

## CONCLUSION

The Government's recommended sentence of 180 months confinement, to be followed by lifetime supervised release, is sufficient but not greater than necessary to serve the purposes of sentencing pursuant to § 3553(a). Upon an extensive review of any and all provisions of the applicable statutes and the facts and circumstances of this case, there exists no basis which would justify a sentence below the term requested by the Government. A more lenient sentence should not be granted.

<div style="margin-left: 50%;">

Respectfully submitted,

Timothy A. Garrison
United States Attorney

By   /s/Kenneth W. Borgnino

Kenneth W. Borgnino
Assistant United States Attorney
Special Victims Unit
Charles Evans Whittaker Courthouse
400 East Ninth Street, Suite 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3122

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on October 20, 2020, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record.

/s/Kenneth W. Borgnino

Kenneth W. Borgnino
Assistant United States Attorney

10